IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SAMUEL AGUIRRE NUNEZ,

        Plaintiff,

v.                                                                                                No. CV 18-312 CG

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Samuel Nunez' *Motion to Reverse and Remand for Rehearing, with Supporting Memorandum* (the "Motion"), (Doc. 23), filed November 1, 2018; Defendant Commissioner Nancy A. Berryhill's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 25), filed December 21, 2018; and Mr. Nunez' *Reply to Brief in Response to Motion to Reverse and Remand* (the "Reply"), (Doc. 26), filed January 16, 2019.

Mr. Nunez filed an application for disability insurance benefits on June 9, 2016 and for supplemental security income on May 3, 2016. (Administrative Record "AR" 184, 191). In both of his applications, Mr. Nunez alleged disability beginning March 31, 2013. *Id.* Mr. Nunez claimed he was limited in his ability to work due to: a left shoulder injury; a left chest non-cancerous mass removal; hypertension; high cholesterol; and insomnia. (AR 226). Mr. Nunez later amended his disability onset date to August 3, 2015. (AR 205).

Mr. Nunez' applications were denied initially on July 25, 2016 and upon

reconsideration on October 24, 2016. (AR 114, 120). At Mr. Nunez' request, (AR 132), a hearing was held on September 5, 2017 before Administrative Law Judge ("ALJ") Eric Weiss, (AR 31). Mr. Nunez and Tammy Donaldson, an impartial vocational expert ("VE") appearing telephonically, testified at the hearing and Mr. Nunez was represented by a non-attorney advocate, Catalina Marie Laaroussi. *Id.*

On December 21, 2017 the ALJ issued his decision, finding Mr. Nunez not disabled at any time between his alleged onset date, August 3, 2015, through the date of his decision. (AR 24). Mr. Nunez requested review by the Appeals Council, (AR 182), which was denied, (AR 1-3), making the ALJ's opinion the Commissioner's final decision for purposes of this appeal.

Mr. Nunez, who is now represented by attorney Francesca MacDowell, argues in his Motion that: (1) his residual functional capacity ("RFC") does not incorporate the limitations proscribed by treating nurse practitioner ("NP") K. Cathey, (Doc. 23 at 6-10); (2) the ALJ failed to properly consider limitations resulting from his diabetes, obesity, depression, and anxiety, *id.* at 16-20; and (3) substantial evidence presented by Mr. Nunez' testimony and the medical opinions in the record supports a finding of disability, *id.* at 10-16. Relatedly, Mr. Nunez also contends that because the VE was presented with an incorrect RFC assessment, the ALJ's reliance on the VE's testimony was improper. *Id.* at 24-25. The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the ALJ erred in his consideration of Mr. Nunez' treating nurse practitioner's opinion, the Court finds that Mr. Nunez' Motion should be **GRANTED** and this case **REMANDED** for further proceedings.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) (2015), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

At the first four steps of the SEP, the claimant bears the burden of showing: (1) he is not engaged in "substantial gainful activity;" (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) meet or equal one of the "listings"[1] of presumptively disabling impairments; or (4) he is unable to perform

---

1. 20 C.F.R. pt. 404, subpt. P, app. 1.

his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in his past relevant work, the ALJ will proceed to step five of the evaluation process. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III. Background

Mr. Nunez claimed he was limited in his ability to work due to: a left shoulder injury; a left chest non-cancerous mass removal; hypertension; high cholesterol; and insomnia. (AR 226). At step one, the ALJ determined that Mr. Nunez had not engaged in substantial gainful activity since August 3, 2015, the alleged disability onset date. (AR 18). At step two, the ALJ found that Mr. Nunez has the following severe impairments: left shoulder impingement syndrome with rotator cuff tendinosis, SLAP tear, and acromioclavicular degenerative joint disease post-surgical repair; right wrist loose body in wrist joint and right ulnar impaction syndrome post-surgery; and male left breast gynecomastia/mass post-mastectomy with nipple grafting. *Id.* At step three, the ALJ determined that none of Mr. Nunez' impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (AR 19).

At step four, the ALJ found that Mr. Nunez has the RFC to perform light work with the following limitations on his abilities to: lift 20 pounds occasionally, lift and carry 10 pounds frequently, and push and pull occasionally with bilateral upper extremities; walk, stand, and sit for 6 hours per 8-hour workday with normal breaks; occasionally climb

5

ramps and stairs, but never ladders, ropes, and scaffolds; frequently balance, stoop, crouch, kneel, and occasionally crawl; occasionally reach overhead, and frequently reach in front and laterally with the non-dominant left upper extremity; frequently handle with the dominant right upper extremity; and avoid more than occasional exposure to extreme cold and wetness, vibration, and dangerous moving machinery. (AR 19, 20).

In formulating Mr. Nunez' RFC, the ALJ stated that he considered Mr. Nunez' symptoms and the extent to which those symptoms can reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. §§ 404.1529, 416.929 and Social Security Ruling ("SSR") 16-3p. (AR 20). The ALJ also stated that he considered opinion evidence consistent with the requirements of 20 C.F.R. §§ 404.1527 and 416.927. *Id.* The ALJ concluded that some of Mr. Nunez' impairments could be expected to cause his alleged symptoms, but he found that the intensity, persistence, and limiting effects that Mr. Nunez described were not entirely consistent with the evidence in the record. *Id.*

In evaluating the medical evidence in the record, the ALJ stated that he gave "little weight" to the opinion of NP Cathey. (AR 22). The ALJ explained that NP Cathey's report was both unsupported by her treatment notes and inconsistent with Mr. Nunez' own testimony at the hearing. *Id.* In addition, the ALJ stated NP Cathey was "not an acceptable medical source" pursuant to the Social Security Act. *Id.* The ALJ similarly afforded the opinion of State Agency reviewing physician Mark Werner, M.D., "little weight," opining that the later opinion of State Agency reviewing physician Robert Weisberg, M.D., was more consistent with the record. *Id.* The ALJ therefore gave Dr. Weisberg's opinion "great weight," finding that his opinion was supported by the

6

"longitudinal medical records." *Id.*

The ALJ also discussed Mr. Nunez' outpatient treatment notes and records from August 2015 to June 2017. (AR 20-21). In addition, the ALJ analyzed Mr. Nunez' testimony at the hearing and the third-party function report submitted by his wife, Paula Nunez. (AR 20-22). The ALJ credited Mrs. Nunez' third-party report "little weight," noting that it was submitted before Mr. Nunez' August 2016 shoulder surgery and Mrs. Nunez had a pecuniary interest in a finding of disability for her husband. (AR 22).

After examining Mr. Nunez' medical reports and his testimony at the hearing, the ALJ found that Mr. Nunez is unable to perform any of his past relevant work and proceeded to step five of the SEP. (AR 23). At this step, the ALJ noted that Mr. Nunez was 48 years old on the alleged disability onset date, and therefore was classified as a "younger individual" in accordance with the Regulations. *Id.* However, Mr. Nunez subsequently changed age categories and is now correctly classified as an individual "closely approaching advanced age." *Id.* The ALJ also determined that Mr. Nunez has at least a high school education and is able to communicate in English. *Id.*

Further, the ALJ explained that if Mr. Nunez had the RFC to perform the full range of light work, a finding of not disabled would be directed by Medical-Vocational Rule 202.21. (AR 24). However, the ALJ found that Mr. Nunez' limitations impeded his ability to perform the full range of light work. *Id.* The ALJ therefore relied on the testimony of the VE to determine applicable jobs Mr. Nunez could perform in the national economy. *Id.* The ALJ noted that the VE testified at the hearing that an individual with Mr. Nunez' same age, education, work experience, and RFC could perform the jobs of sales attendant, furniture rental clerk, and information clerk. *Id.* After

finding the VE's testimony consistent with the Dictionary of Occupational Titles, the ALJ adopted the testimony of the VE and concluded that, because Mr. Nunez is capable of performing work existing in significant numbers in the national economy, he is not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 24).

**IV.     Analysis**

Mr. Nunez presents four arguments in his Motion before the Court. First, Mr. Nunez contends that the ALJ improperly disregarded the opinion of NP Cathey, who assessed greater physical limitations than those recognized by the ALJ. (Doc. 23 at 6-10). In his second argument, Mr. Nunez alleges the ALJ failed to consider the symptoms and limitations resulting from his diabetes, obesity, depression, and anxiety. *Id.* at 16-20. Next, Mr. Nunez claims that substantial evidence, such as the medical reports of his physicians and his testimony at the hearing, supports a more restrictive RFC assessment, rendering him disabled for purposes of the Social Security Act. *Id.* at 10-16. Finally, Mr. Nunez argues the ALJ's reliance on the VE's testimony was improper because the testimony was based on an incorrect RFC assessment. *Id.* at 24-25.

In response, the Commissioner argues the ALJ's rejection of NP Cathey's medical opinion was proper, and the reasons he provided adequately support his decision. (Doc. 25 at 4-8). Next, the Commissioner contends the ALJ properly assessed Mr. Nunez' depression and anxiety as non-severe impairments, because they had persisted for less than one year. *Id.* at 11. Relatedly, the Commissioner argues that Mr. Nunez did not allege obesity as an impairment in his claim of disability, thus rendering his current argument inconsistent with his former testimony. *Id.* at 10. In addition, the

Commissioner combats Mr. Nunez' allegation that substantial evidence supports a more restrictive RFC assessment by highlighting several medical records and treatment notes that support the ALJ's decision. *Id.* at 8-9. Finally, the Commissioner concludes, there is no legally reversible error illustrated by Mr. Nunez' step-five argument because the ALJ's decision is supported by substantial evidence. *Id.* at 15-19.

   *A. The ALJ's Consideration of Opinion Evidence*

Although it is not required that an ALJ discuss every piece of evidence, he is required to discuss, at a minimum, the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Of course, it is not necessary for an ALJ to delineate the direct correspondence between an RFC finding and a specific medical opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). However, an ALJ cannot "pick and choose" through a medical opinion, taking only the parts that are favorable to a finding of nondisability. *See id.* at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). Ultimately, the ALJ is required to weigh the medical source reports and provide "appropriate explanations" for accepting or rejecting the opinions. SSR 96-5p, 1996 WL 374183, at *5.

   To aid in the ALJ's analysis, the Regulations set forth the following factors that should be considered when assessing the value of each medical opinion:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

9

20 C.F.R. §§ 404.1527(c), 416.927(c); *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (the "20 C.F.R. §§ 404.1527, 416.927 factors"). While not every factor will be applicable in every case, the ALJ must at least explain his decision in a manner that is "sufficiently specific to [be] clear to any subsequent reviewers." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citation omitted); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

In addition, the Commissioner may not rationalize the ALJ's decision post hoc or attempt to supply possible reasons for the ALJ's decision after the fact. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted). It follows then, that the court may not make a post hoc effort to "salvage [an] ALJ's decision" and judicial review remains limited to the reasons provided in the ALJ's decision. *Robinson*, 366 F.3d at 1084-85; *Carpenter*, 537 F.3d at 1267 (citation omitted). Thus, this Court may only consider the reasoning proffered by the ALJ himself, and not any post hoc rationale provided by the Commissioner. *Robinson*, 366 F.3d at 1084 (citations omitted).

### i. NP Cathey's Opinion and the ALJ's Analysis

Mr. Nunez first argues the ALJ improperly rejected the physical limitations proscribed by NP Cathey, a treating source who completed an assessment evaluating Mr. Nunez' impairments. (Doc. 23 at 7). Specifically, Mr. Nunez challenges each of the three reasons the ALJ proffered to discount NP Cathey's opinion. *Id.* First, Mr. Nunez contends NP Cathey is an acceptable medical source under the Social Security Act. *Id.* at 10. Next, Mr. Nunez argues NP Cathey's opinion does not conflict with the testimony he proffered regarding his daily activities. *Id.* at 9-10. Finally, Mr. Nunez states that NP

Cathey's medical assessment was supported by her treatment records and the ALJ's allegation that her report was internally inconsistent is too vague to survive judicial scrutiny. *Id.* at 7-9.

In response, the Commissioner argues the ALJ properly afforded NP Cathey's opinion little weight and adequately supported his decision. (Doc. 25 at 4-5). First, the Commissioner contends that the ALJ correctly determined that a nurse practitioner is not an acceptable medical source under the Social Security Act. *Id.* at 5. Next, the Commissioner highlights evidence of Mr. Nunez' daily activities that support the ALJ's conclusion that NP Cathey's opinion was sufficiently contradicted by the record. *Id.* at 7-8. Finally, the Commissioner provides multiple treatment notes that contradict NP Cathey's assessment about Mr. Nunez' extreme functional limitations. *Id.* at 5-7.

On June 9, 2017, NP Cathey completed a Physical Residual Functional Capacity Assessment ("PRFCA") and rendered an opinion on Mr. Nunez' physical limitations. (AR 842-849). In her PRFCA, NP Cathey opined that Mr. Nunez has the following limitations: he could frequently and occasionally lift and/or carry less than 10 pounds, (AR 843); he could stand and/or walk with normal breaks for at least 2 hours in an 8-hour workday, *id.*; he could sit for about 6 hours in an 8-hour workday, *id.*; he was limited in his upper extremities in his ability to push and/or pull, *id.*; he can never climb ramps or stairs, stoop, kneel, crouch, or crawl, and can occasionally balance, (AR 844); he is limited in his ability to reach in all directions, and his abilities to handle and finger objects, *id.*; he should avoid concentrated exposure to extreme cold, noise, vibration, fumes, odors, dusts, gases, and poor ventilation, (AR 846); he should avoid even moderate exposure to extreme heat, *id.*; and he should avoid all exposure to hazards,

such as machinery and heights, *id.* NP Cathey then concluded that the severity of Mr. Nunez' symptoms and their alleged effect on his physical function are consistent with the total medical and nonmedical evidence in the record. (AR 847).

In his analysis of NP Cathey's report, the ALJ stated that he afforded her assessment of Mr. Nunez' limitations "little weight." (AR 22). Specifically, the ALJ discredited NP Cathey's assessment because: (1) as a nurse practitioner, she is not "an acceptable medical source"; (2) her conclusions were inconsistent with Mr. Nunez' reported activities of daily living; and (3) her assessment of Mr. Nunez' severe limitations conflicted with her own treatment notes in the record. *Id.*

          *a) NP Cathey as an acceptable medical source*

The parties first dispute the veracity of the ALJ's statement that NP Cathey "is not an acceptable medical source." *See* (AR 22). The parties also inadvertently dispute the correct application of the Social Security Regulations, specifically whether the pre-2017 Regulations apply, 20 C.F.R. §§ 404.1527(f) and § 416.927(f), or the post-2017 Regulations control the case, 20 C.F.R. §§ 404.1520c(d) and 416.920c(d). *See* (Doc. 25 at 5).

As a preliminary matter, the application of the Regulations in dispute – pertaining to the appropriate weight that should be afforded to a nurse practitioner's medical opinion – hinge on when the claim was filed, not when the ALJ issued his decision. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5855-01 (2017). Here, because Mr. Nunez filed his initial claims for Social Security benefits in 2016, the pre-2017 Regulations apply. *See id.* (explaining the difference in treatment of medical sources between claims filed before March 27, 2017 and those

filed on or after March 27, 2017). For purposes of the parties' dispute, the notable difference is the distinction in the pre-2017 Regulations between "acceptable" medical sources and "other" medical sources, a distinction later deleted in the post-2017 Regulations. *See* 20 C.F.R. § 404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017"); 20 C.F.R. § 404.1520c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017").

NP Cathey is not an "acceptable medical source" pursuant to 20 C.F.R. §§ 404.1513(a)(1)-(5), 416.913(a)(1)-(5). "Acceptable medical sources" include physicians, psychologists, certain optometrists and podiatrists, and certain speech-language pathologists. *Id.* Rather, under the Social Security disability standards that were in place when Mr. Nunez' claim was filed, nurse practitioners – as well as physicians' assistants, naturopaths, chiropractors, audiologists, and therapists – are categorized as "other medical sources." *See Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (citing 20 C.F.R. §§ 404.1502, 404.1513). The distinction between acceptable medical sources and other medical sources "is necessary because '[i]nformation from . . . 'other [medical] sources' cannot establish the existence of a medically determinable impairment.' . . . Further, 'only acceptable medical sources can give . . . medical opinions' and 'be considered treating sources . . . whose medical opinions may be entitled to controlling weight.'" *Bowman v. Astrue,* 511 F.3d 1270, 1275 n.2 (10th Cir. 2008) (quoting SSR 06-03p, 2006 WL 2329939 at *2)*.*

Nevertheless, the opinions of "other" medical sources should still be weighed. Indeed, the Regulations state that "[r]egardless of its source, we will evaluate every

13

medical opinion we receive." 20 C.F.R. §§ 404.1527(c), 416.927(c). Social Security Ruling 06-03p clarifies that the factors used in weighing medical opinions of acceptable medical sources "set out in 20 C.F.R. §§ 404.1527(d) and 416.927(d) apply equally to 'all opinions from medical sources who are not acceptable medical sources as well as from other [non-medical] sources.'" *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (quoting SSR 06-03p, 2006 WL 2329939at *4). It follows that:

> depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

*Frantz*, 509 F.3d at 1302 (quoting SSR 06-03p, 2006 WL 2329939 at *5). Adjudicators are instructed to "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Frantz*, 509 F.3d at 1302 (quoting SSR 06-03p, 2006 WL 2329939 at *6).

Here, as an "other" medical source, NP Cathey's assessment should have been properly weighed by the ALJ. Indeed, in his decision to afford NP Cathey's opinions little weight, the ALJ was required to adequately explain why he rejected her opinions and provide an appropriate explanation for his decision. As such, the statement by the ALJ that NP Cathey is not an acceptable medical source is not an adequate explanation for assigning little weight to her assessment.

### b) Consistency with Mr. Nunez' Activities of Daily Living

Next, Mr. Nunez contends the ALJ's assertion that NP Cathey's opinion was inconsistent with his activities of daily living was not supported by substantial evidence. (Doc. 23 at 9-10). As such, he proffers, the ALJ's conclusion to afford NP Cathey's opinion little weight is not adequately supported. *Id.* In response, the Commissioner cites to evidence of Mr. Nunez' statements that demonstrate inconsistency with NP Cathey's report. (Doc. 25 at 7-8).

An ALJ's assertion that a treating source's opinion is inconsistent with the record does provide a facially valid reason for affording the source's opinion limited weight. *See Langley*, 373 F.3d at 1122-23. However, the ALJ is required to supplement this statement with specific evidence of *how* the evidence is contradictory to that provided in the record. *See id.* Consequently, merely pointing to the treating source's assessments and opining that the medical statements set forth therein are inconsistent with the record is inadequate to overcome the deference typically afforded to treating sources. Rather, in explaining his reasoning for rejecting a medical opinion, the ALJ must clearly articulate his rationale, allowing any subsequent reviewers to ascertain his conclusions. *Langley*, 373 F.3d at 1119 (citation omitted).

In this case, the ALJ provided the following support for his conclusion that NP Cathey's report was inconsistent with Mr. Nunez' activities of daily living: "[T]he claimant reported that he lifts his grandchildren and a gallon of milk (Exhibit 5E and Hearing record)." (AR 22). The Court has reviewed Exhibit 5E, Mr. Nunez' eight-page Function Report, (AR 244- 251); and the hearing record, (AR 31-52), both cited in support of the ALJ's finding that NP Cathey's report should be entitled little weight.

In Exhibit 5E, Mr. Nunez reported that he cannot engage in "heavy lifting," (AR 246), is "unable to lift," (AR 247), and is "not able to pick up [his] grand kids like [he] use too, [*sic*]" (AR 248). He also reported that his injuries affect his ability to lift and he is unable to lift objects over five pounds. (AR 249). There is no statement in Exhibit 5E that suggests Mr. Nunez lifts his grandchildren or can carry a gallon of milk. The ALJ's purported reliance on Exhibit 5E does not support his conclusion or the statements which it follows.

Next, the ALJ cites to the hearing transcript in support of his finding that NP Cathey's report is inconsistent with Mr. Nunez' testimony. (AR 22). The ALJ's citation to the hearing transcript also does not adequately permit a subsequent reviewer to understand why he concluded NP Cathey's report should be entitled to little weight. Specifically, Mr. Nunez testified at the hearing, "I can't do much of anything now," (AR 38), "[I] try to pick up my little dog and pet it, [*sic*] have a hard time doing that," (AR 39), "I can't even hold a screw driver," (AR 40), "I can't pick simple stuff up," (AR 41), and "I can't pick nothing up," *id.* The Court is unable to locate where in the hearing transcript Mr. Nunez asserted that he can lift his grandchildren, as the ALJ suggests. On the contrary, when asked "Do you do anything with your grandchildren?" Mr. Nunez plainly responded, "No. I'd like to but I babysit them every now and then when they come over and watch them." (AR 39).

In addition, it is unclear where in the hearing transcript Mr. Nunez stated he is capable of picking up a milk jug. Rather, Mr. Nunez stated the exact opposite: "I can't pick up like a simple milk jug. I can't pick [*sic*] and if I do pick up anything it seems like it

starts to tingle right away." (AR 40). Mr. Nunez' representative revisited this comment during her questioning:

> **Representative**: "When you mentioned you could pick up maybe a gallon of milk that's about eight pounds. A bag of potatoes. So, you have to use both hands or one hand."
>
> **Mr. Nunez**: "Yeah, I can't even pick up a coffee cup with this hand. I'm not – now"
>
> **Representative**: "Which hand?"
>
> **Mr. Nunez**: "But I try. I don't want to be an invalid but I can't. There's stuff I can't do."

(AR 44). It remains unclear that Mr. Nunez ever asserted that he can pick up a gallon of milk, even with his representative's attempt to clarify his statements. The Court cannot find the evidence the ALJ relies on in support of his conclusion that Mr. Nunez' activities of daily living conflict with NP Cathey's testimony. Therefore, the Court must conclude that the ALJ's second reason for discounting NP Cathey's opinion, inconsistency with Mr. Nunez' reporting, is unsupported and insufficient to explain his conclusion. As such, the ALJ's citations to Exhibit 5E and the hearing transcript do not provide "appropriate explanations" for rejecting NP Cathey's opinion. *See* SSR 96-5p, 1996 WL 374183, at *5.

### c) Internal Consistency of the Opinion

Finally, Mr. Nunez contests the ALJ's conclusion that NP Cathey's assessment should be afforded little weight because it is inconsistent with her treatment notes. (Doc. 23 at 7-9). In response, the Commissioner contends that Mr. Nunez "primarily relies upon his own subjective complaints to [NP Cathey]" to demonstrate internal consistency. (Doc. 25 at 5-7). The Commissioner then provides a list of NP Cathey's

17

findings that were "often normal or mostly normal and did not support the extreme limitations in her opinion." *Id.* at 6-7.

The ALJ provided the following support for his conclusion that NP Cathey's assessment was inconsistent with her treatment notes: "This opinion is given little weight as unsupported by the evidence of the nurse practitioner (Exhibits 22F, 18F, 7F)." (AR 22). The Court has reviewed Exhibit 7F, NP Cathey's treatment notes from August 2016, (AR 450); Exhibit 18F, over 120 pages of additional treatment notes authored by NP Cathey, (AR 692-818); and Exhibit 22F, another fifty pages of NP Cathey's treatment notes, (AR 853-903).

The ALJ's conclusion that NP Cathey's assessment conflicts with her previous treatment notes is plagued with many of the same problems as those presented in the previous discussion. However, here, the ALJ has not provided two concrete examples for the Court to parse the record in search of, but rather, the ALJ cites to over 200 pages of medical records with no indication of what precisely serves as the conflicting evidence that supports his conclusion. In addition, the records the ALJ cites contain evidence that contradicts his conclusion, such as notes of: "pain in the left shoulder joint(s), shoulder joint stiffness on the left, soft tissue pain in muscle tissue in the left shoulder," (AR 450); "muscle aches, left shoulder pain, pain localized to one or more joints, and joint stiffness localized to one or more joints," (AR 452); "left shoulder was tender on palpation," (AR 453); reported "back problems, joint pain, muscle stiffness, muscle cramps," (AR 670); and a "swollen left arm," (AR 698).

The ALJ's analysis and supporting citations are inadequate for any subsequent reviewer to sufficiently understand his rationale and cannot be deemed specifically

articulable. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding that "the absence of findings supported by specific weighing of the evidence" in the record leaves the Court unable to assess whether relevant evidence adequately supports the ALJ's conclusion); *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) ("Without the benefit of the ALJ's findings supported by the weighing of this relevant evidence, we cannot determine whether his conclusion . . . is itself supported by substantial evidence."); *see also Lewis v. Berryhill*, No. 16-5061, 2017 WL 676502, at *2 (10th Cir. Feb. 21, 2017) (unpublished) (holding that the ALJ erred when he did not specify which parts of a doctor's opinion were inconsistent with other medical evidence, and finding this "lack of specificity [to be] confusing").

Finally, the Commissioner's attempt to delineate the specific treatment notes the ALJ was referring to is of little value to the Court. Indeed, the Court cannot accept the Commissioner's post hoc explanation for the ALJ's conclusions. *Carpenter*, 537 F.3d at 1267. It is not within the Court's purview to opine on what the ALJ may have been referencing in his opinion when he cited to over 200 pages of evidence – such an exercise would usurp the essential function of the administrative process. *Id.* Rather, the proper course is to remand the case to allow the ALJ to provide adequate reasoning for why NP Cathey's report is entitled to little weight, or perhaps, assign it a different weight if no such reasoning exists.

### V.     Conclusion

For the foregoing reasons, the Court finds that the ALJ failed to provide sufficiently articulable reasons and appropriate explanations for disregarding NP Cathey's physical assessment. The Court will not address Mr. Nunez' remaining claims because they may

become moot upon remand.

**IT IS THEREFORE ORDERED** that Mr. Nunez' *Motion to Reverse and Remand for Rehearing with Supporting Memorandum*, (Doc. 23), is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE